NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JUAN LAMEIRO,**<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>        **Defendant.** | Docket No.: 13-cv-6928-WJM-MF<br><br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Juan Lameiro brings this action pursuant to 42 U.S.C. §§ 405(g), seeking review of a final determination by the Commissioner of Social Security (the "Commissioner") denying his applications for Disability and Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). Due to an error in the formulation of Plaintiff's residual functioning capacity, the Commissioner's determination is **VACATED IN PART** and **REMANDED** for further proceedings consistent with this opinion.

## I.    LEGAL STANDARDS

### A.    The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe."

*Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

### B.      Standard of Review

For the purpose of this appeal, the court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, the court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

## II.    BACKGROUND

Plaintiff Juan Lameiro is a forty-five year-old male with a twelfth grade education. Plaintiff previously worked as a school bus safety inspector and a driver's license inspector/exam technician. (Administrative Transcript ("Tr.") 16, 37-38). Plaintiff quit his position in 2007 and moved to Florida in search of a new job. (Tr. 27). After a year and a half of seeking employment, he returned to New Jersey, where he continued looking for work without success. (Tr. 27). In September 2011, he suffered a heart attack. (Tr. 27). He survived, but he was left with symptoms of cardiovascular disease, namely, shortness of breath, leg soreness and cramping, disrupted sleep, and fatigue.

Plaintiff filed an application for DIB on December 7, 2011 and for SSI on December 12, 2011.  In both applications, Plaintiff alleged disability beginning on the day of his heart attack, September 7, 2011.  The Commissioner denied the claims initially on March 13, 2012, and upon reconsideration on October 16, 2012.  Plaintiff appeared before an Administrative Law Judge ("ALJ") at a hearing on November 9, 2012.  On May 7, 2013, the ALJ affirmed denial of benefits.  The Appeals Council denied a request for review on October 25, 2013.  Plaintiff now appeals to the District Court.

## A.      Summary of the Record

The record includes medical records and evaluations from treating physicians and non-treating state examiners.  It also includes Plaintiff's written statements and Plaintiff's testimony.

Mr. Lameiro went to the emergency room for treatment of cardiac arrest in September 2011.  (Tr. 270).  Mr. Lameiro was diagnosed with the following relevant conditions: (1) inferior wall ST segment elevation myocardial infarction status post drug-eluting stents to 90 percent right coronary artery, mid left anterior descending and D1; (2) ischemic cardiomyopathy with left ventricular ejection fraction of 35% consistent with chronic systolic heart failure; (3) cardiac arrest; (4) acute respiratory failure.  (Tr. 270).  Mr. Lameiro was discharged from Englewood Hospital and Medical Center on September 26, 2011.  (Tr. 270).

Mr. Lameiro presented to physicians at Englewood Hospital and Medical Center for follow-up visits several times between October 2011 and April 2014.  (Tr. 304-21).  During these visits, Mr. Lameiro complained consistently of waking up multiple times during the night and of needing to rest after walking between one and a half blocks and three blocks or after climbing two flights of stairs.

On December 20, 2011, one of Mr. Lameiro's treating physicians, Dr. Vitievsky, reported to the New Jersey Department of Labor that Plaintiff could not lift and carry more than five pounds, could not stand or walk more than two hours per day, was limited in his ability to push or pull, and could not travel due to high blood pressure.  (Tr. 330).

On January 24, 2012, Plaintiff's cardiologist, Dr. Husain, reported a diagnosis of "Class 4" coronary artery disease.  (Tr. 340).  A Class 4 cardiac patient experiences symptoms even while resting and cannot perform any of the activities of daily living beyond personal toilet or its equivalent without increased discomfort. (Tr. 340).  On April 25, 2012, Dr. Husain sent a report to the New Jersey Department

of Labor diagnosing Plaintiff again with coronary artery disease and peripheral vascular disease, including severe dyspnea, which is shortness of breath.  (Tr. 359).

Plaintiff presented to Dr. Gottdiener on July 13, 2012 for a checkup.  He complained of bilateral calf pain.  A vascular study found that mild peripheral vascular disease was the cause. (Tr. 364).  Dr. Gottdiener noted that Plaintiff could not walk more than 3 blocks without becoming short of breath.  (Tr. 364).  At this time, Dr. Gottdeiner noted that Plaintiff did not need a defibrillator implanted because his ejection fraction was more than 35%.  (Tr. 365).

On his initial application for DIB, a state examiner, Dr. Bousvaros, determined that Plaintiff was not disabled and had the RFC for sedentary work. (Tr. 53-54).  Dr. Bousvaros stated that Plaintiff's medically determinable impairments could reasonably be expected to produce his symptoms. (Tr. 52).  He also stated that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by objective medical evidence. (Tr. 52). Nevertheless, he determined that Plaintiff could frequently lift or carry ten pounds, could walk or stand up to two hours a day, and could sit up to six hours a day.  (Tr. 52-53).  In his analysis, Dr. Bousvaros stated that Plaintiff's RFC prevented Plaintiff from performing any of his previous relevant work.  (Tr. 51).  On reconsideration, another state examiner, Dr. Briski, affirmed Dr. Bousvaros's conclusion that Plaintiff had the RFC for sedentary work.  (Tr. 80).

On January 29, 2013, Dr. Husain filled out an evaluation for Plaintiff's attorney.  In the evaluation, Dr. Husain stated that Plaintiff had coronary artery disease with a stable prognosis.  (Tr. 403).  Dr. Hussain stated that the primary symptom was dyspnea. (Tr. 403).  He stated that he was able to completely eliminate Plaintiff's pain with medication without unacceptable side effects.  (Tr. 405).  He stated that Plaintiff could only sit for three hours a day and could only stand or walk two hours a day.  (Tr. 405).  He stated that Plaintiff could only occasionally lift objects up to five pounds and could never carry any weight.  (Tr. 406).  He noted that Plaintiff would need to frequently take unscheduled breaks of twenty minutes and would be out sick more than three days per month.  (Tr. 408).  He stated that Plaintiff's symptoms would periodically interfere with his ability to concentrate. (Tr. 407).  He stated that Plaintiff was capable of handling low work stress but that his symptoms would increase in a competitive environment.  (Tr. 407-08).

Plaintiff reported that he could lift only five to fifteen pounds, had to walk slowly, and had to frequently stop to catch his breath.  (Tr. 188).  He complained that other activities caused him dizziness. (Tr. 188).  He stated that during the day, he did some very limited walking exercises but spent much of the day watching

television.  He stated that he could prepare very simple meals, clean once a week, and do his laundry once a week.  (Tr. 185).

At the hearing, the Plaintiff testified that during the day he exercises by walking a block and a half, the most he can walk before experiencing shortness of breath and leg cramps.  (Tr. 31, 34).  He testified that he wakes up two or three times a night with palpitations, resulting in tiredness during the day.  (Tr. 34).  He testified that he lays down two or three times a day for half an hour.  (Tr. 35).  He testified that he could not carry groceries.  (Tr. 33).

Plaintiff gave conflicting testimony regarding his search for work in 2012 and 2013.  The ALJ and Plaintiff had the following colloquy:

ALJ:      What prevents you from being able to find a job today in 2013?

Plaintiff: I have tried to apply for different places, but I have trouble walking, trouble breathing.  I walk a block and a half and I got to stop to rest. . . . I can't even walk up a flight of stairs.

. . .

ALJ:      When was the last time you applied [for a job] . . . I'm asking about jobs you applied for in 2012 and 2013. . . .

Plaintiff: It was a security job working with public service.

ALJ:      In 2013?

Plaintiff: This year?  No.

ALJ:      2012?

Plaintiff: Yes.

ALJ:      In 2013, have you tried to get any jobs?

Plaintiff: No.

ALJ:      I'm asking if you have done anything in 2013?

Plaintiff: Yes, I tried with friends to try to get some sort of money.

ALJ:      If one of those places had hired you, would you have taken

> the job?

Plaintiff:  I would have, yes.

(Tr. 29-30).

Plaintiff also had the following colloquy with his lawyer immediately upon the end of the ALJ's line of questioning about Plaintiff's employment-seeking activities:

> Lawyer: Mr. Lameiro, if you had obtained a position as a security guard, would you have been capable of performing that work for five days a week for 7-8 hours a day?
>
> Plaintiff:  Not according to my doctor because of fatigue.  I can't stand as long as I was able to.  I can't sit for as long as I was able to.  I can't walk a block and a half.  I have to rest every so often.
>
> Lawyer:  You were looking for something part-time?  In the years of 2012 and 2013, you testified that you were looking for some sort of security with friends.  Was that part-time that you were looking for?
>
> Plaintiff: It could be part-time or whatever they would have offered.  I would have tried to do anything.
>
> Lawyer:  Do you believe that during the period of 2012 and 2013, you had the capacity to perform some sort of work or activity?
>
> Plaintiff:  Not the way I'm feeling with the problem with the breathing and walking, legs getting cramped.

(Tr. 31).

## B.    The ALJ's Decision

Administrative Law Judge Hilton Miller made the following findings.  At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 17, 2010, the alleged onset date.  (Tr. 13).  At step two, the ALJ found that Plaintiff has had the following severe, medically determinable impairments: coronary artery disease, high blood pressure, and peripheral artery disease.  (Tr. 13).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals the criteria of any impairment found in the Listing of Impairments. (Tr. 13-14). At step four, the ALJ found that the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)[1], with the following qualifications:

> [H]e can walk with normal breaks for a total of about 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour workday. He can frequently climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. Work must not involve hazardous or dangerous machinery or unprotected heights and also takes into account non-exertional limitations allowing the performance of routine tasks with some moderately complex tasks that can be explained. Work can incorporate only occasional changes in routine.

At step four, the ALJ found that Plaintiff could perform the past relevant work of a vehicle safety inspector. At step five, the ALJ concluded that the Plaintiff could also successfully adjust to other work available in sufficient numbers in the national economy.

In reaching this opinion, the ALJ stated that he gave significant weight to the opinions of the non-treating state examiners but little weight to the opinions of the treating physicians. The ALJ found that Dr. Husain's opinions about the extent of Plaintiff's limitations were inconsistent with Dr. Husain's own statements that Plaintiff's pain has been completely relieved with medication and that Plaintiff was capable of handling low work stress. The ALJ also thought that Plaintiff's statements regarding his willingness to work and his ability to do laundry once a week undermined the treating physicians' opinions about Plaintiff's limitations.

## III.   DISCUSSION

On appeal, Plaintiff substantively attacks the ALJ's 1) finding that Mr. Lameiro's congestive heart failure does not medically equal listing 4.02 on the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. 404.1567(b).

Listing of Impairments; 2) giving more credit to the state's non-treating medical examiners than to the treating physicians; 3) RFC.

### A. Listing 4.02

Plaintiff argues that his medical impairment equals listing 4.02 on the Listing of Impairments for chronic heart failure. The objective medical evidence simply does not meet the criteria of listing 4.02. Listing 4.02 states:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular . . . ejection fraction *of 30 percent or less* during a period of stability (not during an episode of acute heart failure) . . .
>
> AND
>
> B. Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MD, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1 to Subpart P, Listing 4.02.

In the best case scenario for Plaintiff's disability claim, he had an ejection fraction of 30-35% during a period of stability. (Pl. Br. 19 (*referring to* Tr. 304)). In his most recent examination, he had an ejection fraction of over 35%. (Tr. 364).

It is well-established that a claimant bears the burden of establishing that his impairment meets or equals all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original); *accord Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). A claimant does not establish

medical equivalency by showing that he had a medical finding close to what the listing requires.  *See Byrd v. Apfel*, 168 F.3d 481, 1998 WL 911718, at \*5 (4th Cir. 1998); *Grant v. Comm'r of Soc. Sec.*, 91 F.3d 143, 1996 WL 403111, at \*3 (6th Cir. 1996).

Given that Plaintiff never had an ejection fraction of 30% or less during a period of stability, but moreover, showed an ejection fraction of over 35% in his most recent examination, the ALJ had substantial evidence from which to conclude that Plaintiff did not meet the criteria of listing 4.02 on the Listing of Impairments.

## B.     Credibility of Physicians

Plaintiff argues that the ALJ erred in not giving enough weight to the opinions of the treating physicians and giving too much weight to the non-treating state examiners.  The ALJ made no error here.

The opinion of a treating physician is usually entitled to great weight, especially when such an opinion is based on treatment and observation of a patient over a prolonged period of time.  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*citing Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).  However, the determination by a treating physician that a claimant is disabled is not dispositive on whether a disability truly exists. 20 C.F.R. 40.1527(d)(1); *Adorno v. Shalala*, 40 F.3d 43 (3d Cir. 1994) (*citing Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990)). Furthermore, controlling weight is required only if the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a] case record."  20 C.F.R. 404.1527(c)(2).  "To be "not inconsistent," the medical opinion "need not be supported directly by all of the other evidence (*i.e.*, it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."  SSR 96-2p.

An ALJ must consider the following factors when finding that a medical source opinion is not due controlling weight: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors.  20 C.F.R. § 404.1527(c)(1-6).  Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'"  *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d at 429(3d Cir. 1999)).

The only real conflicts between the treating physicians and the non-treating physicians was the upper limit of Plaintiff's carrying capacity and manipulative limitations. Both sets of doctors agreed that Plaintiff was limited to two hours of standing or walking per day. The non-examining doctors stated that Plaintiff could occasionally lift or carry up to ten pounds and could frequently lift or carry less than ten pounds. The treating physicians estimated that no lifting or carrying above five pounds should ever occur. Also, Dr. Husain stated that Plaintiff had limitations in "reaching, handling, or fingering" while the non-treating physicians noted that Plaintiff had no "postural" or "manipulative" limitations.

The ALJ gave little weight to the treating physicians' opinion based upon internal inconsistencies in Dr. Husain's opinion and Plaintiff's statements. Specifically, Dr. Husain noted that he was able to completely eliminate Plaintiff's pain with medication without unacceptable side effects, (Tr. 405), and that Plaintiff was capable of handling low work stress, (Tr. 408). Moreover, Plaintiff's statement that he did cleaning and laundry once a week contradicted the treating physicians' opinion that Plaintiff could not lift or carry more than five pounds at the most. In sum, this constitutes substantial evidence from which the ALJ could properly credit the non-examining physicians over the treating physicians. However, as we discuss in the next section, the ALJ erred in finding an RFC that went well beyond the opinion of the non-treating physicians. [2]

## C.   The RFC

The ALJ's RFC was not supported by substantial evidence. The ALJ found Plaintiff has an RFC to perform "light work," as defined in 20 C.F.R. 404.1567(b), with some modifications. The ALJ's modified "light work" RFC assumed that Plaintiff could frequently lift twenty pounds at a time and could walk, stand, or sit with normal breaks for about six hours out of an eight hour work day. No medical opinion supported these exertional limits. All the physicians agreed that Plaintiff could only stand or walk for two hours out of an eight hour day. No physician found that the Plaintiff could lift or carry more than ten pounds. Even if the ALJ decided to select the upper limit of what Plaintiff self-reported as his lifting capacity, fifteen pounds, this still would not support the ALJ's determination that Plaintiff could lift

---

[2] Plaintiff's statements regarding a willingness to work heavily influenced the ALJ's decision to give little weight to Dr. Husain's opinion. Plaintiff's statements about a willingness to work do not constitute substantial evidence to reject Dr. Husain's opinion about Plaintiff's exertional limitations. A willingness to work out of financial desperation should not be confused with an ability to work. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005). It would be even greater error to determine that a Plaintiff's RFC was greater than that found by any physician based upon some of Plaintiff's ambiguous testimony about a willingness to try a job in order to get some money. Nevertheless, the other evidence cited constitutes substantial evidence to support the ALJ's decision to give little weight to Dr. Husain's opinion about the Plaintiff's limitations on lifting and carrying.

twenty pounds.

The ALJ stated that he was crediting the non-treating physicians, who made the determination that Plaintiff could perform sedentary work. "Sedentary work" involves lifting no more than ten pounds at a time and only occasional walking or standing. 20 C.F.R. § 404.1567(a). The ALJ's RFC permitting light work with walking and standing for up to six hours a day was therefore not supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is **VACATED IN PART** and **REMANDED** for analysis of Plaintiff's RFC in accordance with this opinion, and for new analysis of Steps 4 and 5 of 20 C.F.R. §§ 404.1520 in accordance with the revised RFC. An appropriate order follows.


/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 16, 2014**